## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**CARDINAL HEALTH 110 L L C ET AL**     **CASE NO.  2:21-CV-01385**

**VERSUS**                 **JUDGE JAMES D. CAIN, JR.**

**DEQUINCY MEMORIAL HOSPITAL INC  MAGISTRATE JUDGE KAY
ET AL**

### MEMORANDUM RULING

Before the court is a Motion for Default Judgment [doc. 19] filed by plaintiffs Cardinal Health 110 LLC ("CH 110"), Cardinal Health 200 LLC ("CH 200"), and Cardinal Health Pharmacy Services LLC ("CHPS") (collectively, "Cardinal Health" or "plaintiffs") under Federal Rule of Civil Procedure 55. Defendants have made no appearance in this action and the motion is regarded as unopposed.

## I.
### BACKGROUND

This suit arises from a Credit Application executed by defendant DeQuincy Memorial Hospital ("DMH") and delivered to Cardinal Health on or about February 11, 2009. *See* doc. 1, att. 2. The Application sets forth Cardinal Health's agreement to accept orders from DMH on credit in exchange for DMH's agreement to timely and fully pay for such orders. *Id.* Pursuant to Section V of the Application, DMH granted Cardinal Health a security interest in all of its business asserts, including "[a]ll goods, equipment, inventory, accounts, accounts receivable, chattel paper, instruments, investment property and all general intangibles, books and records, computer programs and records, and other personal

property, tangible or intangible[.]" *Id.* at 2. Cardinal Health perfected this security interest by filing a UCC Financing Statement with the Louisiana Secretary of State on April 3, 2009 (File No. 10-53202), which was continued on March 10, 2014 (File No. 10-89583), and again on March 6, 2019 (File No. 10-130075). Doc. 1, att. 3. DMH also executed a Pharmacy Services Agreement ("PSA") with CHPS on March 20, 2017, with an effective date of February 1, 2017. Doc. 1, att. 5. Under the terms of the PSA, CHPS agreed to provide remote pharmacy services to DMH in exchange for full and timely payment. *Id.*

Pursuant to the terms of the Credit Application, Cardinal Health alleges, DMH ordered and received from CH 110 and CH 200 certain pharmaceutical and medical products on open account. Cardinal Health further alleges that DMH failed to pay for these products and now owes $111,971.71 ($99,047.43 to CH 110 and $12,924.28 to CH 200), exclusive of service charges, on its trade account. *See* doc. 1, att. 4 (account summary). Pursuant to Section III, ¶ 5 of the Application Cardinal Health may assess a service charge of 1.5 percent per month on any undisputed amount not paid by DMH. Doc. 1, att. 2, p. 2. Under this section DMH is also required to pay all out-of-pocket expenses incurred by Cardinal Health, including attorney fees and costs, in enforcing the Credit Application. *Id.*

Pursuant to the terms of the PSA, Cardinal Health further alleges, CHPS provided the remote pharmacy services and DMH did not dispute any invoice. However, DMH still owes $17,617.44 (exclusive of service charges) to CHPS. Doc. 1. Under the terms of the PSA, CHPS is entitled to a service charge of 1.5 percent per month on any unpaid and undisputed balance as well as costs incurred by CHPS, including attorney fees and costs, to collect or recover any amounts due. Doc. 1, att. 5, arts. 3.01 & 5.05.

Cardinal Health filed suit in this court on May 24, 2021, raising claims for breach of contract under the Credit Application and PSA, and in the alternative goods/services sold and delivered and claim on account on the Credit Application as well as unjust enrichment. Doc. 1. It also raised a claim for breach of guaranty against Christy B. Matheson, who had signed the Credit Application as one of two personal guarantors.[1] *Id.*; *see* doc. 1, att. 2. It invoked the court's diversity jurisdiction under 28 U.S.C. § 1332, alleging that both defendants are Louisiana citizens while plaintiffs are citizens of Delaware, Ohio, and Texas.

A summons was issued as to each defendant on May 24, 2021. Doc. 3. The summons and complaint were served on Christy Matheson, personally, and on DMH through personal service on Mrs. Matheson in her capacity as its vice president and director, on June 14, 2021. Docs. 7, 8. Defendants' answer due date was set for July 6, 2021. To date, defendants have failed to serve responsive pleadings or motions. Accordingly, Cardinal Health moved for entry of default on August 3, 2021, and the clerk granted the motion. Docs. 9, 10.

Cardinal Health now moves for default judgment, seeking (1) damages in the aggregate amount of $129,589.15, consisting of $99,047.43 owed to CH 110 under the Credit Application, $12,924.28 owed to CH 200 under the Credit Application, and $17,617.44 owed to CHPS under the PSA; (2) service charges in the amount of $6,989.71, plus additional service charges accruing at the rate of 1.5 percent per month until the date

---

[1] The court takes judicial notice of the fact that the other guarantor, John Matheson, died in 2018. Service was proper on Mrs. Matheson, supra, because the registered agent, Mr. Matheson, was deceased.

of judgment; (3) all costs, expenses, and attorney fees incurred as a result of these proceedings, totaling $11,182.55; (4) all costs, expenses, and attorney fees incurred in connection with the collection of the default judgment; and (5) post-judgment interest that may accrue until all amounts owed thereunder are paid in full. Doc. 19.

## II.
### LAW & APPLICATION

### A. Law Governing Motion for Default Judgment

Under Federal Rule of Civil Procedure 55, the court has the authority, on motion of the plaintiff, to enter a default judgment against a defendant who makes no response to an action. Fed. R. Civ. P. 55(a)–(b). However, such a judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by the courts only in extreme situations"— namely, "when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The court considers a motion for default judgment by first asking (1) whether entry of a default judgment is appropriate under the circumstances and then (2) whether there is an adequate basis in the pleadings to support the judgment. *J&J Sports Prods., Inc. v. Morelia Mexican Restaurant*, 126 F.Supp.3d 806, 814 (N.D. Tex. 2015).

Under the first question, relevant factors include (1) whether there are material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by defendant.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Under the second, the court must assess the merits of plaintiff's claims and determine whether he has a case for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

### B.  Application

#### 1.  Appropriateness of default judgment

Defendants have filed no responsive pleadings. The grounds for default are therefore clear. There is no dispute to the material facts asserted in the complaint. *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). The defendants' continued failure to respond has likewise brought a halt to the adversarial process for this case filed nearly two years ago, prejudicing plaintiffs, and there is nothing in the record to show that the failure to respond amounts to a good faith mistake or excusable neglect. This failure to appear likewise mitigates the harshness of a default judgment. *J&J Sports Prods.*, 126 F.Supp.3d at 814. Finally, the court is not aware of any facts that would oblige it to set aside the default upon a defendant's appearance. Accordingly, all of the *Lindsey* factors favor entering default judgment in this matter.

#### 2.  Whether there is a sufficient basis for judgment on the pleadings

The default results in the court deeming the well-pleaded allegations of the complaint as admitted. The court reviews these allegations under the standards set by Federal Rule of Civil Procedure 8 to determine whether they state a claim for relief. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Accordingly, the pleadings must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "Detailed factual allegations are not required, but the pleading must present more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotations omitted; cleaned up).

### a. Breach of contract claims

Under Louisiana law, the elements of a breach of contract claim are (1) the existence of a contract, (2) the party's breach of the contract, and (3) resulting damages. *Payphone Connections Plus, Inc. v. Wagners Chef, LLC*, 276 So.3d 589, 596 (La. Ct. App. 4th Cir. 2019). "When the plaintiff's legal action arises from a written obligation, prima facie evidence of the obligation is the writing itself and the introduction of the writing into the record is generally required." *Mautner v. Ware*, 296 So.3d 1209, 1213 (La. Ct. App. 5th Cir. 2020). Cardinal Health has attached the Credit Application and PSA to its complaint, showing the existence of these agreements between the applicable Cardinal Health entities and DMH, and specifically alleged the manner of DMH's breach through non-payment of accepted goods/services under those contracts. Additionally, it has alleged resulting damages in the form of the financial losses it incurred. Accordingly, all three elements of the claim are met and the court finds DMH liable to Cardinal Health for breach of contract under the PSA between CHPS and DMH as well as under the Credit Application between Cardinal Health and DMH. There is no need to consider DMH's liability under Cardinal Health's alternative claims for relief.

### b. Breach of guaranty

Under Louisiana law, a guaranty is known as a suretyship. *DROR Int'l, LP v. Thundervision, LLC*, 81 So.3d 182, 185 (La. Ct. App. 5th Cir. 2011). Under such an agreement "a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code art. 3035. A surety agreement must be express and in writing. *Id.* at art. 3038.

Cardinal Health shows that defendant Christy Matheson executed a Guaranty for the Credit Application, personally and unconditionally guaranteeing payment and performance of DMH's obligations to Cardinal Health. Doc. 1, att. 2, p. 2. Specifically, Mrs. Matheson personally guaranteed the punctual and full payment of all DMH's obligations to CMH, "whether now existing or hereafter arising." *Id.* It alleges that it was induced to supply products and services based on this guaranty, and that Mrs. Matheson breached same by failing to pay the monies owed to Cardinal Health upon demand after DMH failed or refused to meet its obligations. *Id.* As a result, Cardinal Health alleges it suffered damages. The guaranty meets the requirements of a suretyship under Louisiana law and Cardinal Health's allegations establish a claim for breach. Accordingly, it is entitled to default judgment on the claim.

### 3. Damages

Damages on a default judgment ordinarily may not be awarded "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Where, however, the amount can be "determined with certainty by reference to the pleadings and supporting documents . . . the

court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993). The district court has "wide latitude" in deciding whether to require an evidentiary hearing. *Id.* at 310.

Damages in this matter can be calculated with certainty under the account statements and contracts, as described above: an aggregate of $129,589.15, consisting of $99,047.43 owed to CH 110 under the Credit Application, $12,924.28 owed to CH 200 under the Credit Application, and $17,617.44 owed to CHPS under the PSA. Under the PSA and Credit Application Cardinal Health is entitled to a service charge of 1.5 percent per month plus attorney fees and costs. The service charges amount to $6,989.71, plus additional service charges accruing at the rate of 1.5 percent per month between the filing of the Motion for Default Judgment on February 27, 2023, and the entry of this judgment. Under Louisiana law, attorney fees are only allowed where specifically authorized by statute or contract. *Bamburg v. Air Systems LLC*, 324 So.3d 213, 219 (La. Ct. App. 2d Cir. 2021). Both the Credit Application and PSA require payment of costs and attorney fees incurred in the recovery of amounts owed thereunder. Cardinal Health has submitted proof of costs and attorney fees expended in this matter at a total of $11,182.55 (comprising $10,654.25 in attorney fees to McGlinchey Stafford and $528.30 in costs) and is entitled to this amount. *See* doc. 19, att. 4. The court has reviewed the submission and finds it to be reasonable under prevailing market rates in this district. Cardinal Health is also entitled to costs, expenses, and attorney fees incurred in connection with the collection of this judgment by default, and to post-judgment interest.

## III.
### CONCLUSION

For the reasons stated above, the Motion for Default Judgment [doc. 19] will be

**GRANTED**.

**THUS DONE AND SIGNED** in Chambers on the 8th day of May, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**